UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
INTERCO PRODUCTS CORPORATION,

**MEMORANDUM & ORDER**
04-CV-5559 (DRH) (ARL)

Plaintiff,

-against-

PROCESOS MECANICOS ESPANOLES S.L.,

Defendant.
----------------------------------------------------------------X

**HURLEY, District Judge:**

On September 12, 2005, this Court granted the motion by Plaintiff Interco Products Corporation ("Plaintiff") for an entry of default judgment against Defendant Procesos Mecanicos Espanoles S.L. ("Defendant"), and referred the case to Magistrate Judge Arlene Rosario Lindsay, pursuant to 28 U.S.C. § 636(b)(3), for a report and recommendation as to damages and attorney's fees. On March 3, 2006, Judge Lindsay issued a Report and Recommendation (the "Report") that Plaintiff be awarded $0.00 in attorney's fees and costs and $534,135.00 in damages. Presently before the Court are Plaintiff's objections to the Report, which were timely filed. Defendant did not submit any objections.

## I. *Standard of Review*

Federal Rule of Civil Procedure 72(b) provides that when a magistrate judge issues a report and recommendation on a matter "dispositive of a claim or defense of a party," the district court judge shall make a de novo determination of any portion of the magistrate judge's disposition to which specific written objection has been made. Fed. R. of Civ. P. 72(b). Accordingly, the Court applies de novo review to those portions of the Report to which objections were raised. *See id.* The Court reviews those portions to which no objections have been filed for clear error. *See, e.g.*,

*Kenneth Jay Lane, Inc. v. Heavenly, Inc.*, No. 03 CV 2132, 2006 WL 728407, at *1 (S.D.N.Y. Mar. 21, 2006).

## II.     Plaintiff's Claims for Damages

### A.     Background

Defendant is a Spanish manufacturer of WEBER-brand carburetors and other automobile replacement parts. Plaintiff has been distributing Defendant's WEBER-brand carburetors in North America since 2001. In order to meet the needs of its customers and to account for lead-time, Plaintiff's general practice has been to maintain a six-month supply of carburetors in its inventory at all times.

On May 2, 2002, Plaintiff and Defendant entered into a Distribution Agreement which granted Plaintiff the exclusive right to distribute Defendant's WEBER-brand products within North America, including WEBER-brand carburetors. Pursuant to the Distribution Agreement, for the years 2002 through 2004, Defendant agreed to supply, and Plaintiff agreed to buy, the following number of WEBER-brand carburetors for resale by Plaintiff within North America:

> 2002 – 29,000 units
> 2003 – 36,000 units
> 2004 – 36,000 units

(Pl.'s Objections, Ex. 2 ¶ C.) By its own terms, the Agreement "continue[d] in force for an initial term expiring [D]ecember 31 of 2005, unless sooner terminated in accordance with the provisions in this Article." (*Id.* ¶ F.a.)

In or about May 2002, Plaintiff began ordering WEBER-brand carburetors from Defendant pursuant to the terms of the Distribution Agreement and Defendant delivered those carburetors to Plaintiff. At that time, Plaintiff already had WEBER-brand carburetors in stock from

2

its purchases prior to the Distribution Agreement. During 2002, Plaintiff sold 27,696 of Defendant's WEBER-brand carburetors.

Defendant continued to deliver carburetors to Plaintiff in 2003, however, many of Plaintiff's orders were either delayed or never delivered. Plaintiff offers proof that during the second half of 2003 and the first half of 2004, Plaintiff placed orders for more than 15,000 carburetors that were never delivered by Defendant. Nevertheless, Plaintiff continued to sell WEBER-brand carburetors from its remaining inventory, which had been ordered in 2003 and prior years. In 2003, Plaintiff sold 31,190 WEBER-brand carburetors.

As of June 2004, Defendant ceased supplying any of the WEBER-brand carburetors ordered by Plaintiff. Despite Plaintiff's repeated requests, Defendant has failed to supply any additional carburetors to Plaintiff since June 2004. Plaintiff continued selling carburetors from its remaining inventory, which had been ordered from Defendant in 2003 and prior years. In 2004, Plaintiff sold 19,269 of Defendant's carburetors and in 2005, Plaintiff sold 5,241 of Defendant's carburetors. Plaintiff asserts that had Defendant provided it with the number of carburetors it was required to supply under the Distribution Agreement, Plaintiff could have sold that number in 2004 and 2005. Since Defendant has not filed an answer, that assertion remains uncontroverted.

On December 12, 2005, Plaintiff initiated this action, seeking a permanent injunction as well as damages for breach of contract. Despite being timely served, Defendant never responded to the Complaint. This Court entered a default judgment against Defendant on September 12, 2005 and referred the matter to Judge Lindsay for a Report and Recommendation as to damages and attorney's fees.

Plaintiff requested damages in the amount of $2,526,180.74, together with costs and

interest. Specifically, Plaintiff contended that it was entitled to recover damages for lost profits of $676,053.00 for 2004 and lost profits of $1,559,817.00 for 2005. Plaintiff also sought consequential damages in the form of good will, including lost customers, damage to its business reputation, and loss of market share as well as additional expenses of $290,310.74.

### B. *The Report*

In the Report, Judge Lindsay found that under New York law, which governs the terms of the Distribution Agreement, lost profits were recoverable in this case. (*See* Report at 4-5 ("When the aggrieved buyer is in the business of reselling the breaching seller's goods, the buyer may recover . . . lost profits as consequential damages.") (citing *Canusa Corp. v. A & R Lobosco, Inc.*, 986 F. Supp. 723, 731-32 (E.D.N.Y. 1997).) She noted that "as the exclusive distributor of Defendant's WEBER-brand carburetors in North America, Plaintiff is a reseller of goods entitled to recover lost profits." (*Id.* at 5.) Judge Lindsay further found that Plaintiff had proffered sufficient evidence to establish lost profits. (*Id.*)

For 2004, Judge Lindsay found that Plaintiff's average sales for the preceding two years (2002 and 2003) were 29,443 units at an average gross profit of $52.50. (*Id.* at 6.) As a result of Defendant's failure to deliver the minimum number of WEBER-brand carburetors required under the Distribution Agreement in 2004, Plaintiff was only able to sell 19,269 units that year, resulting in a loss of 10,174 units. (*Id.* at 5-6.) Thus, Judge Lindsay calculated damages for 2004 as follows:

**(10,174 units) x ($52.50 gross profit per unit) = $534,135.00**

Plaintiff does not object to the Report's findings with respect to Plaintiff's claims for lost profits during 2004.

With regard to Plaintiff's claims for lost profits in 2005, Judge Lindsay

4

recommended that such damages be denied:

> Unlike prior years, the distribution agreement does not require that [Defendant] supply a minimum number of WEBER-brand carburetors to [Plaintiff] in 2005. The parties' decision not to include guaranteed availability for 2005 reflects either the parties' uncertainty as to their needs, or perhaps as to available supplies. In the absence of [Defendant's] commitment to supply a specific number of carburetors or [P]laintiff's commitment to purchase carburetors, any computation as to lost profits in 2005 would be purely speculative.

(Report at 6.) Plaintiff objects to this portion of the Report.

Finally, Judge Lindsay recommended that Plaintiff's claims for damages for loss of customers, loss of good will, damage to business reputation, loss of market share, attorney's fees and costs be denied. Plaintiff does not object to this portion of the Report.

### C. *Plaintiff's Objections*

As noted above, Plaintiff objects to the Report only to the extent that it recommends that Plaintiff's claim for lost profits in 2005 be denied in its entirety. To obtain an award of lost profits, a plaintiff must demonstrate that "(1) the damages were caused by the breach; (2) the alleged loss [is] capable of proof with reasonable certainty[;] and (3) the particular damages were within the contemplation of the parties to the contract at the time it was made." *International Telepassport Corp. v. USFI, Inc.*, 89 F.3d 82, 85 (2d Cir. 1986) (quoting *Ashland Mgmt., Inc. v. Janien*, 82 N.Y.2d 395, 404 (1993)). Judge Lindsay found that because the Distribution Agreement does not require Defendant to supply a specific number of carburetors to Plaintiff during 2005, "any computation as to lost profits in 2005 would be purely speculative." (Report at 6.)

Plaintiff contends that Judge Lindsay erred in not taking into account the fact that pursuant to the terms of the Distribution Agreement, Plaintiff had the exclusive right to distribute Defendant's WEBER-brand carburetors through the end of 2005. Thus, although the Agreement

5

did not obligate Defendant to sell Plaintiff any carburetors in 2005, because Defendant failed to supply thousands of carburetors during 2003 and 2004 *that could have been sold in 2005*, Plaintiff's lost profits for 2005 are not speculative. In this regard, Plaintiff calculates lost profits of $1,270,605.00 for 2005 as follows: (1) Defendant was obligated to supply Plaintiff with a total of 101,000 carburetors over the term of the Distribution Agreement (29,000 in 2002 + 36,000 in 2003 + 36,000 in 2004); (2) because Defendant failed to fulfill all of Plaintiff's orders and ceased supplying any carburetors to Plaintiff as of June 2004, Defendant only supplied Plaintiff with a total of 56,547 carburetors between 2002 and 2004, resulting in a shortfall of 44,453 carburetors (101,000 - 56,547); Defendant was therefore obligated to supply Plaintiff with an additional 44,453 carburetors over the term of the Distribution Agreement, all of which could have been sold in 2004 and 2005; (3) based on Plaintiff's average sales of 29,443 carburetors per year, as determined by Judge Lindsay, Plaintiff would have sold 10,174 of the 44,453 additional carburetors during 2004 (29,443 minus the 19,269 units actually sold in 2004); (4) Plaintiff would therefore still have an additional 34,279 (44,453 - 10,174) carburetors available to sell in 2005; (5) because Defendant failed to supply the required number of carburetors to Plaintiff, Plaintiff was only able to sell 5,241 carburetors in 2005; (6) based on Plaintiff's average sales of 29,443 carburetors per year, Plaintiff lost sales of 24,202 carburetors for the year 2005 (29,443 - 5,241 = 24,202); (7) multiplying 24,202 carburetors by $52.50 (Plaintiff's average gross profit as determined by Judge Lindsay), Plaintiff's lost profits for 2005 are $1,270,605.00.

The Court agrees. Because Plaintiff had the exclusive right to sell Defendant's carburetors through the end of 2005, had Defendant provided Plaintiff with all of the carburetors it was obligated to supply in 2003 and 2004, it is reasonable to conclude that Plaintiff could have sold

at least 29,443 of them (its average sales) in 2005. Given that Plaintiff's general practice was to maintain a six-month supply of carburetors in its inventory at all times, Plaintiff's carburetor sales for 2005 would have reflected carburetor purchases made by Plaintiff in prior years.

Plaintiff's proffer in this regard satisfies all three elements necessary for an award of lost profits. *See International Telepassport Corp.*, 89 F.3d at 85 (citing *Ashland Mgmt., Inc.*, 82 N.Y.2d at 404). First, Plaintiff has established that its damages in 2005 were caused by Defendant's breach, to wit, Defendant's failure to sell Plaintiff all of the carburetors it was obligated to sell in 2003 and 2004. Second, the particular damages were within the contemplation of the parties at the time the Distribution Agreement was executed as Defendant was aware of the number of carburetors it was obligated to supply and was also aware that Plaintiff had the exclusive right to sell those carburetors through 2005. Finally, Plaintiff's damages in 2005 are capable of proof with reasonable certainty. Plaintiff sold 5,241 carburetors in 2005. As Judge Lindsay determined, Plaintiff's average sales for 2002 and 2003 were 29,443 carburetors per year. Thus, Plaintiff lost sales of 24,202 carburetors for the year 2005. Applying that number, Plaintiff is entitled to $1,270,605.00 in damages for lost profits for 2005:

**(24,202 units) x ($52.50 gross profit per unit) = $1,270.605.00**

Because these 24,202 units are carburetors Defendant was obligated to sell to Plaintiff in 2003 and 2004 pursuant to the Distribution Agreement, they are not speculative.

### D. *The Remaining Parts of the Report*

Plaintiff does not object to the remainder of the Report. Pursuant to 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72, this Court has reviewed that portion of the Report for clear error, and finding none, now concurs in both its reasoning and its result. Accordingly, the

Court adopts those portions of the Report as if set forth herein.

## CONCLUSION

For the reasons stated above, the Court adopts in part and declines to adopt in part the March 3, 2006 Report and Recommendation. As a result, the Court holds that Plaintiff is entitled to $534,135.00 in damages for lost profits in 2004, $1,270,605.00 in damages for lost profits in 2005, and $0.00 in attorney's fees and costs, for a total of $1,804,740. Upon entry of judgment, the Clerk of the Court is directed to close this case.

**SO ORDERED.**

Dated: Central Islip, N.Y.
March 28, 2006

/s/
Denis R. Hurley,
United States District Judge